IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| E.T. and A.T., by and through their Parents, R.Y. and D.T., and R.Y and D.T., individually,<br>Plaintiffs,<br><br>v.<br><br>Spring-Ford Area School District,<br>Defendant. | 10-cv |

**COMPLAINT**

## INTRODUCTION

1. Plaintiffs, E.T. and A.T., twin brothers, by and through their Parents ("Parents"), R.Y. and D.T., bring this action to vindicate significant procedural rights under the Individuals with Disabilities Education Act, 20 U.S.C. § 1401, *et seq.* ("IDEA") and civil rights under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504") and Section 202 of the Americans with Disabilities Act, 42 U.S.C. §12132. Parents bring this action on behalf of themselves and their sons.

## PARTIES

2. E. and A. reside with their Parents within the boundaries of the Spring-Ford Area School District ("District"). E. and A. are students eligible for special education services as "children with a disability" within the meaning of IDEA, 20 U.S.C. § 1402(3)(A), 34 C.F.R. § 300.8, and "qualified individual[s] with a disability" within the meaning of Section 504, 29 U.S.C. § 705(20) and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104. Parents have a "legally cognizable interest in [their children's] education.... Congress has found that 'the education of children with disabilities can be made more effective by ... strengthening the role and responsibility of parents and ensuring that families of such children have meaningful opportunities to participate in the education of their children at school and at home.'" *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 534 (2007) (citing 20 U.S.C. § 1400(c)(5)).

3. The District is a local educational agency ("LEA") within the meaning of 20 U.S.C. § 1401(15), 34 CFR § 300.28, 22 Pa. Code 14.102(a)(2)(vii), a federal funds recipient within the meaning of IDEA, 20 U.S.C. § 1401 and Section 504, 29 U.S.C. § 794(b)(2)(B).

**JURISDICTION AND VENUE**

4. This Court has original jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

5. Plaintiffs have exhausted their administrative remedies under 20 U.S.C. § 1415(i).

6. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391.

**STATUTORY AND REGULATORY BACKGROUND**

7. The purpose of IDEA is to ensure that "all children with disabilities have available to them a free and appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(c)(1)(A).

8. IDEA requires that the states provide special education to eligible children that is "designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 556 (3d Cir. 2010) (*quoting Board of Educ. v. Rowley*, 458 U.S. 176, 188-89 (1982)).

9. The Supreme Court has described IDEA as a "model of cooperative federalism." The statute "leaves to the States the primary responsibility for developing and executing educational programs, ... [but] imposes significant requirements to be followed in the discharge of that responsibility." *Schaffer v. Weast*, 546 U.S. 49, 51 (2005) (quoting *Rowley*, 456 U.S. at 183).

10. In drafting IDEA, "Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process ... as it did upon the measurement of the resulting IEP against a substantive standard." *Rowley*, 456 U.S. at 205-206 (quoted in *Schaffer*, 546 U.S. at 53).

11. IDEA and its accompanying regulations give parents the right to an independent educational evaluation ("IEE") at public expense if the parents disagree with an evaluation obtained by the public agency." 34 C.F.R. § 300.502(b)(1).

12. The procedural right to an IEE is significant in that it "ensures parents access to an expert who can evaluate all the materials that the school must make available and who can give an independent opinion." Consequently, "[t]hey are not left to challenge the government without a realistic opportunity to access the necessary evidence or without an expert with the firepower to match the opposition." *Schaffer*, 546 U.S. at 53.

13. Parents have a federally protected right to disagree with a school district's evaluation and seek an IEE immediately. In addition, Parents have the right to disagree and pursue reimbursement for independent evaluations at a later date, after they have funded the IEE on their own. *Lauren W. v. DeFlaminis*, 480 F.3d 259, 274-275 (3d Cir. 2007).

14. If a parent requests an IEE, the District must either "(i) Initiate a hearing under Sec. 300.507 to show that its evaluation is appropriate; or (ii) Ensure that an independent educational evaluation is provided at public expense, unless the agency demonstrates in a hearing under Sec. 300.507 that the evaluation obtained by the parent did not meet agency criteria." 34 C.F.R. § 300.502(b)(2).

15. In responding to a request for an IEE, a school district may not deny approval because the parents have failed to provide a rationale for the request. 34 C.F.R. § 300.502(b)(4).

16. IDEA provides that a party may present a complaint with respect to any matter relating to the identification, evaluation, or educational placement of a child "***which sets forth an alleged violation***" of IDEA. 20 U.S.C. § 1415(b)(6) (emphasis added). A school district's request for a declaratory judgment does not allege a violation cognizable under 20 U.S.C. § 1415. *See Alief Indep. Sch. Dist. v. C.C.*, 2010 U.S. Dist. Lexis 34202, at *16 (S.D. Tex. Apr. 7, 2010).

**FACTS**

17. On January 11, 2010, pursuant to its duty to evaluate students eligible for special education on a regular basis, the District issued Reevaluation Reports for E.T. and A.T.

18. Parents requested IEE's for both E.T. and A.T.

19. The District chose not to fund the IEEs, opting instead to file the Complaints attached hereto as Exhibit 1. The Complaints were docketed at 00759-0910AS and 00760-0910AS.

20. In the "Proposed Resolution" section of the Complaints, the District stated: "To the extent we would ever consider funding an IEE, we will demand the specific reasons as to why they are pursuing the IEE and what specifically is their objection to the evaluation." Exhibit 1 at 4, 8.

21. In early April, 2010, notwithstanding Parents' good faith attempts to resolve this dispute without litigation, it became apparent that the parties would be proceeding to a hearing on substantive issues in the near future. As such, Parents concluded that it would be more efficient to litigate the inclusion of the disagreement regarding the IEE in the

subsequent hearing. Therefore, on April 12, 2010, Parents withdrew their request for IEE's at that time. *See* Exhibit 2 at 1 (quoting April 12, 2010 e-mail from J. Kershenbaum to M. Fitzgerald).

22. As of the moment that Parents withdrew their request for an IEE, there was no case or controversy, rendering the Complaint for Due Process filed by the District moot.

23. Rather than acknowledge the Complaints' mootness and withdrawing them, the District instead sought a waiver of plaintiffs' rights to seek reimbursement for the IEEs after they had been completed.

24. As such, the District interfered with the rights of E., A., and their Parents by attempting to coerce a waiver of the federally protected right to seek reimbursement after having secured the IEEs in return for dismissal of the Complaint.

25. Consequently, counsel for the Parents requested that the Hearing Officer dismiss the Complaint, citing the Parents' desire to avoid the unreasonable and unnecessary expense associated with duplicative litigation. *See* Exhibit 2.

26. The District refused to withdraw its Complaint **_specifically because_** Parents could, after securing the IEEs, seek reimbursement for the evaluations. *See* Exhibit 3 (E-mail from M. Fitzgerald to Hearing Officer, dated April 13, 2010). In addition, the District misrepresented facts to the Hearing Officer, stating falsely: "The parents claim judicial economy, however they were the party that demanded this hearing in the first place." In fact, as District personnel were well aware, it was the District, not the Parents, that chose to file for a hearing to avoid paying for the IEEs.

27. The District alleged that Parents acted in bad faith by casting their actions as a "cat and mouse" game. However, it was the District's actions, not the Parents', that undermined the language and intent of IDEA, as follows:

    a.  Parents have a right to request an IEE as soon as they disagree with an evaluation, or to wait until after they have procured their own independent evaluation. *Lauren W.*, 480 F.3d at 274-275.

    b.  "Congress has found that 'the education of children with disabilities can be made more effective by . . . strengthening the role and responsibility of parents and ensuring that families of such children have _meaningful opportunities to participate_ in the education of their children at school and at home.'" *Winkelman*, 550 U.S. at 535 (citing IDEA, 20 U.S.C. § 1400(c)(5)) (emphasis added).

    c.  *Schaffer* recognized that the IEE is a significant procedural protection in IDEA. 546 U.S. at 60-61 ("IDEA thus ensures parents access to an expert who can evaluate all the materials that the school must make available, and who can give an independent opinion. They are not left to challenge the government without a realistic opportunity to access the necessary

    evidence, or without an expert with the firepower to match the opposition"). Thus, Parents' ability to secure and seek reimbursement for necessary expert evaluations is integral to the proper functioning of the due process system envisioned by IDEA.

  d. When it became apparent after Parents' good faith attempts to avoid litigation that the parties would be proceeding to hearing on substantive issues later in the year, Parents acted rationally in withdrawing their request for an IEE. In addition, they acted well within their right to defer seeking reimbursement, as outlined in *Lauren W.*

  e. IDEA's statutory scheme is clear and explicit. When faced with disagreement with its evaluation, the District may avoid the cost of litigation by funding the IEE. If the District chooses not to fund the IEE, it may face a demand for reimbursement. Parents have a federally protected right to seek reimbursement either now or in the future. *See Lauren W.*, 480 F.3d at 274-275.

  f. By contrast, the District has *no* statutory right to a declaratory judgment that its Reevaluation reports are appropriate. Section 1415 provides that a party asserting a *violation* may seek relief. The District was not asserting a violation. The only procedural mechanism that allows the District to seek a declaration that its evaluation is appropriate *presupposes that there is an outstanding request for an IEE.*

28. Thus, on April 13, 2010, the Hearing Officer committed an error of law in stating that "the District must have its hearing unless the parent withdraws the request for the IEE with prejudice." *See* Exhibit 4 (E-mail dated April 13, 2010 from Hearing Officer to M. Fitzgerald and J. Kershenbaum) at 2.

29. In addition, the Hearing Officer committed legal error because she lacked jurisdiction to do anything other than dismiss the District's due process Complaints as moot. As a result of the withdrawal of the IEE requests, there was no controversy to be decided.

30. As a result of the District's coercive and intimidating actions, and the Hearing Officer's legally erroneous prior ruling, Parents agreed under duress not to seek reimbursement for the Independent Educational Evaluations at a later date in order to secure a dismissal of the District's Complaint for Due Process and avoid duplicative, costly litigation.

31. On April 14, 2010, the Hearing Officer issued Orders dismissing the cases upon the condition that Parents would not seek reimbursement for independent evaluations at a later date. *See* Exhibit 5.

32. Subsequently, at significant personal expense, Parents secured an IEE for both E.T. and A.T. by Dr. Margaret Kay, a neuropsychologist and nationally certified school psychologist.

### COUNT I
### APPEAL FROM HEARING OFFICER'S DECISION
### IDEA, 20 U.S.C. §1415 and SECTION 504

33. Plaintiffs incorporate ¶¶ 1 through 32 as if set forth fully herein.

34. This district court owes no deference to conclusions of law drawn by the Hearing Officer. *See J.R. v. Mars Area Sch. Dist.*, 318 Fed. Appx. 113, 118 (3d Cir. 2010); *Carlisle Area Sch. Dist. v. Scott P.*, 62 F.3d 520, 528 n.3 (3d Cir. 1995) ("Obviously, conclusions of law receive plenary review").

35. Upon withdrawal of the requests for independent evaluations, there was no longer a case or controversy. The Hearing Officer erred as a matter of law in (1) imposing conditions upon dismissal of an action that had already become moot and (2) allowing the District to coerce a waiver of the right to reimbursement after Parents had secured the IEEs in return for dismissal of the moot Complaints.

36. Under the merger rule, the Hearing Officer's prior interlocutory order, requiring Parents to withdraw their request for an IEE "with prejudice" to secure dismissal, is an interlocutory order that may be reviewed in the context of this timely appeal from her final Order dated April 14, 2010. *See Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008).

37. In imposing conditions upon dismissal of the action and requiring Parents to waive the significant procedural right to reimbursement for the evaluations at a later date, the Hearing Officer acted *ultra vires*. Thus, this Court should vacate the Order dated April 14, 2010 and provide that the action was dismissed as of that date with no conditions upon Parents' right to pursue reimbursement at a later date.

### COUNT II
### VIOLATION OF
### IDEA, 20 U.S.C. §1415(b)(1), 34 C.F.R. § 300.502(b)(4)

38. Plaintiffs incorporate ¶¶ 1 through 37 as if set forth fully herein.

39. The District's stated policy and practice of demanding "the specific reasons as to why [Parents] are pursuing the IEE and what specifically is their objection to the evaluation" directly contravenes federal regulations, which explicitly prohibit a school district from denying an IEE request due to lack of an explanation or rationale for the request. 34 C.F.R. § 300.502(b)(4).

## Count III
## VIOLATION OF
## ADA, 42 U.S.C. §12203(a),
## SECTION 504 OF THE REHABILITATION ACT, 34 C.F.R. § 100.7(e)
## AND 42 U.S.C. § 1983 (FIRST AMENDMENT)

40. Plaintiffs re-allege paragraphs 1-39 as though fully set forth herein.

41. Section 504 and the ADA protect A.T.'s and E.T.'s rights to a free and appropriate public education.

42. Section 503(b) of the ADA, 42 U.S.C. §12203(b) provides: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act." The anti-retaliation regulation implementing Section 504 provides the same protections. *See* 34 C.F.R. §100.7(e).

43. It is a violation of the First Amendment, redressable under 42 U.S.C. § 1983, to retaliate against individuals who have engaged in protected activity. *See Lauren W. v. DeFlaminis*, 480 F.3d at 267.

44. The District's actions in this case violated the anti-interference provisions of the ADA and Section 504, as well as the First Amendment prohibition against retaliation for protected activity, in that:

    a. The Third Circuit Court of Appeals has held that Parents have a right to reimbursement for an IEE even when they fail to express disagreement, procure their own evaluation, and seek reimbursement at a later date. *Lauren W. v. DeFlaminis*, 480 F.3d at 274-275. Thus, the request for an IEE, whether made immediately upon receipt of an evaluation or later after the Parents receive their own evaluation, is protected activity under federal law.

    b. In this case, despite their good faith efforts to resolve their disputes without resort to litigation, Parents realized that they would likely incur significant expense in proceeding to hearing twice – once on the appropriateness of the Reevaluations and once on the underlying substantive issues. Accordingly, they rationally determined that it would be more efficient for them to pursue all the claims at one time.

    c. The District has no federally protected right to a declaratory judgment that its Reevaluations were appropriate, even when it is aware that Parents do not agree with the evaluation reports. Indeed, the only procedural mechanism for the District seeking that determination requires that there be an existing request for an IEE. Further, in *Lauren W.*, the Court of Appeals expressly recognized the right of Parents to wait until they have their own IEE to determine whether to seek reimbursement.

    d. The District unlawfully sought and received the waiver of the significant procedural right to reimbursement specifically because the District was

   concerned that Parents might invoke their federally protected rights to an IEE in the future. Thus, there is a causal connection between the retaliatory action (the coercive demand for a waiver of the right to seek reimbursement in the future) and the violation of federal rights involved.

e. The District's actions – attempting to force Parents into a duplicative, unnecessary and burdensome hearing if they did not waive their right to seek reimbursement in the future – were sufficient to deter a person of ordinary firmness from exercising his or her rights.

  **WHEREFORE**, Plaintiffs respectfully request that this Honorable Court:

1. Assume jurisdiction over this action;

2. Consider the administrative record below, and hear additional evidence as necessary to make an accurate, independent decision on the merits;

3. As a consequence of the violations alleged in Counts I and III of this Complaint, vacate the Order of the Pennsylvania Special Education Hearing Officer dated April 14, 2010 indicating that the case is dismissed upon the condition that Parents waive their right to receive subsequent reimbursement for the IEE, because the prior withdrawal of the request for funding of an IEE rendered the Complaint moot and enter an Order dismissing the Complaint without conditions;

4. As a consequence of the violations alleged in Counts I, II, and III, issue a Declaratory Judgment that

   a. Parent's withdrawal of the requests for an IEE in this case rendered the Complaint filed by the School District moot, thus depriving the Hearing Officer of jurisdiction to condition dismissal of the School District's Complaint upon the Parents' waiver of the significant procedural right to seek reimbursement for an independent evaluation in the future; and
   b. The School District violated the anti-interference provisions of Section 504 and the ADA, as well as the First Amendment's prohibition on retaliation for assertion of federally protected rights, by demanding that Parents continue with a hearing on the appropriateness of the evaluations unless Parents waive the significant procedural right to seek reimbursement in the future for the IEEs; and
   c. Spring-Ford Area School District's policy of demanding that Parents provide a rationale for requests for an Independent Educational Evaluation violates the regulations implementing IDEA, specifically 34 C.F.R. §300.504(b)(4).

5. Order payment of reasonable attorney's fees and costs (pursuant to IDEA, Section 504 and the ADA) and reimbursement of expert witness fees (pursuant to Section 504); and

6. Order such other relief as may be just and appropriate.

Respectfully submitted,

REISMAN CAROLLA GRAN LLP

Dated: July 12, 2010

*[signature]*
Judith A. Gran
I.D. No. 40134
Catherine Merino Reisman
I.D. No. 57473
19 Chestnut Street
Haddonfield NJ 08033-1810
t 856.354.0071
f 856.873.5640
jgran@reismancarolla.com
creisman@reismancarolla.com

**Attorneys for E.T., A.T., R.Y. & D.T.**

FRANKEL & KERSHENBAUM, LLC

*[signature]*
Joshua M. Kershenbaum
I.D. No. 203270
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA 19428
T 610.260.6054
F 610.645.0888
josh@davefrankel.com

**Attorneys for E.T., A.T., R.Y. & D.T.**