**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| E.T. and A.T., by and through their Parents, R.Y. and D.T., and R.Y and D.T., individually,<br>Plaintiffs,<br><br>v.<br><br>Spring-Ford Area School District,<br>Defendant. | 10-cv-3415<br><br><br>Joel H. Slomsky, J. |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**MOTION TO DISMISS OF DEFENDANT SPRING-FORD AREA SCHOOL DISTRICT**

**INTRODUCTION**

Plaintiffs E.T., A.T. ("Students") and R.Y. and D.T. ("Parents") submit this Memorandum of Law in opposition to the Motion to Dismiss (ECF No. 3) filed by the Spring-Ford Area School District ("District") and in response to the Brief in Support of the Motion (ECF No. 3-1) ("*D. Br.*").

**STANDARD OF REVIEW**

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a Complaint when, assuming all factual allegations in the Complaint are true, the averments fail "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *Twombly* and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) did not alter the well-established requirement that when considering a motion to dismiss "a court must 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under a reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Schwartz v. Lawyers Title Ins. Co.*, 680 F. Supp. 2d 690, 699 (E.D. Pa. 2010) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (E.D. Pa. 2010)). In considering a 12(b)(6) motion:

> district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court

> must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. . . . Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." 129 S. Ct. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See *Phillips*, 515 F.3d at 234-35. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

"[W]hat suffices to withstand a motion to dismiss necessarily depends on substantive law and the specific claim asserted . . . Some claims will demand relatively more factual detail to satisfy this standard, while others require less."  *In re Ins. Brokerage Antitrust Litig.*, 2010 U.S. App. LEXIS 17107, at *46 n.18 (3d Cir. Aug. 16, 2010).

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

E.T. and A.T., twin brothers, live with their Parents in the Spring-Ford Area School District.  *Compl.* ¶ 1; *D. Br.* at 1.  Pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* ("IDEA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504" or "Rehabilitation  Act"), the District is responsible for providing a free and appropriate public education ("FAPE") to E.T. and A.T.  *Compl.* ¶¶ 2-3.  The District does not dispute that Section 504 and IDEA protect E.T. and A.T.

On January 11, 2010, pursuant to its duty to evaluate students eligible for special education on a regular basis, the District issued Reevaluation Reports for E.T. and A.T.  *Id.* ¶ 17.  As provided for in IDEA, 20 U.S.C. § 1415(b)(6), Parents requested independent educational evaluations ("IEEs") for both Students.  *Id.* ¶ 18.  The District refused to fund the IEEs, and instead filed a request for a due process hearing seeking to defend the District's re-evaluation reports.  *Id.* ¶ 19 and Ex. 1.  The District stated unequivocally that it would

2

never fund an IEE unless the requesting parents provided "specific reasons as to why they are pursuing the IEE and what specifically is their objection to the evaluation." *Id.* ¶ 20, Ex. 1 at 4, 8.

On April 12, 2010, Parents withdrew their request for immediate funding of the IEEs, instead indicating that they would pay privately for the evaluations and reserving their right to seek reimbursement at a later date. *Id.* ¶ 21 and Ex. 2. On April 13, 2010, the Pennsylvania Special Education Hearing Officer held that "the District must have its hearing unless the parent withdraws the request for the IEE with prejudice." *Id.* ¶ 28 and Ex. 4. As a result of the District's actions (refusing to withdraw its Complaint for due process even though there was no outstanding request for funding of an IEE), plaintiffs agreed under duress not to seek reimbursement for the IEEs at a later date in order to secure a dismissal of the District's Complaint for due process. *Id.* ¶ 31. Subsequently, at significant personal expense, Parents secured an IEE for both E.T. and A.T. by Dr. Margaret Kay, a neuropsychologist and nationally certified school psychologist. *Id.* ¶ 32.

Count I of the Complaint is an appeal from the Hearing Officer's decision requiring that Parents waive the right to seek reimbursement for private evaluations in the future as a condition for dismissal of the District's Complaint for Due Process. *Id.* ¶¶ 33-37. Count II challenges the District's stated policy and practice of demanding "the specific reasons as to why [Parents] are pursuing the IEE and what specifically is their objection to the evaluation" as contrary to federal regulations. *Id.* ¶¶ 38-39. Count III asserts claims for both interference and retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12203(a) ("ADA") and Section 504 of the Rehabilitation Act, 34 C.F.R. § 100.7(e). In addition, Count III asserts a claim under 42 U.S.C. § 1983 because the District's actions constituted unlawful retaliation in violation of the First Amendment to the United States Constitution.

**ARGUMENT**

      A. **Achievement of the Congressional Purpose in Enacting IDEA Requires Enforcement of the Extensive Procedural Protections for Parents and their Children Created by the Statute**

IDEA explicitly states its broad remedial purpose in the statutory text:

(1) (A) to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living;
   (B) to ensure that the rights of children with disabilities and parents of such children are protected; and
\* \* \*
   (4) to assess, and ensure the effectiveness of, efforts to educate children with disabilities.

20 U.S.C. § 1400(d); *see also Forest Grove v. T.A.*, 129 S. Ct. 2484, 2491 (2009).

As the Court recognized in *Board of Educ. of the Henrick Hudson Sch. Dist. v. Rowley*, 458 U.S. 176 (1982), IDEA accomplishes its goals through extensive procedural requirements:

> When the elaborate and highly specific procedural safeguards embodied in [20 U.S.C.] § 1415 are contrasted with the general and somewhat imprecise substantive admonitions contained in the Act, we think that the importance Congress attached to these procedural safeguards cannot be gainsaid. It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process, *see, e.g.,* §§ 1415(a)-(d), as it did upon the measurement of the resulting IEP against a substantive standard. We think that the congressional emphasis upon full participation of concerned parties throughout the development of the IEP, as well as the requirements that state and local plans be submitted to the Secretary for approval, demonstrates the legislative conviction that adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP.

*Id.* at 205-206.

One of the procedural safeguards guaranteed by IDEA is the right "to obtain an independent educational evaluation." 20 U.S.C. § 1415(b)(1). Indeed, it is so important that the statute creates an <u>*unconditional*</u> right to an IEE, stating: "The procedures required by [§

4

1415] shall include the following: (1) An opportunity for the parents of a child with a disability . . . to obtain an independent educational evaluation of the child." 20 U.S.C. § 1415(b)(1).  The regulations cited by the District and relied upon by the Hearing Officer state that ***if*** a parent requests prospective funding of an IEE at public expense, the District must either "file a due process complaint to request a hearing to show that its evaluation is appropriate or ensure that an [IEE] is provided at public expense." 34 C.F.R. § 300.502.[1]

In *Lauren W. v. DeFlaminis*, 480 F.3d 259 (3d Cir. 2007), our Court of Appeals recognized that the right to reimbursement for an IEE necessarily encompassed the right to reimbursement after parents had obtained their own evaluation.  "[U]nless the regulation is so applied 'the regulation [would be] pointless because the object of parents' obtaining their own evaluation is to determine whether grounds exist to challenge the District's.'" 480 F.3d at 274-275 (quoting *Warren G. v. Cumberland County Sch. Dist.*, 190 F.3d 80, 87 (3d Cir. 1999)).  The District's (and Hearing Officer's) interpretation of the regulation in this case allows a school district to seek a declaratory judgment that its own evaluation is appropriate whenever parents have expressed disagreement and indicated that they will pay for an IEE and potentially seek reimbursement retroactively.  This is completely inconsistent with *Lauren W*.

Finally, in *Schaffer v. Weast*, 546 U.S. 49 (2005), the Supreme Court recognized that this right to an IEE is fundamental to parents' ability to pursue procedural rights to challenge the appropriateness of a program offered by a school district:

---

[1] There appears to be no statutory basis for the IEE procedure established by the regulations. The statute unequivocally states that parents are entitled to independent evaluations and makes no exception in cases where the school district can prove that its own evaluation was appropriate. Nonetheless, the Hearing Officer lacked jurisdiction under either the regulations or the statute once the parents withdrew their request for prospective funding of the IEE.  Thus, this Court need not reach the issue of whether the IEE regulations are invalid because they alter the statutory cause of action in a fundamental way, expanding the rights granted to school districts. *Cf. Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90 (2002) (Department of Labor regulation implementing Family Medical Leave Act invalid because it expanded employees' rights under the statute).

> IDEA thus ensures parents access to an expert who can evaluate all the materials that the school must make available, and who can give an independent opinion. They are not left to challenge the government without a realistic opportunity to access the necessary evidence, or without an expert with the firepower to match the opposition.

*Id.* at 61. Parents have the burden of proving that a proposed program is inappropriate, but Congress did not intend that they shoulder that burden without the resources they need to challenge the school district's position. Any interpretation of the regulations that interferes with the right of students with disabilities and their parents to get an independent expert opinion in order to carry that burden goes to the heart of IDEA's procedural protections.

### B. PLAINTIFFS HAVE STATED CLAIM FOR RELIEF IN ALL THREE COUNTS OF THE COMPLAINT

#### 1. Count I Identifies a Decision Reviewable by this Court

The District incorrectly asserts that the "Complaint fails to cite to or reference to any final order or decision at the Administrative level triggering application of the merger rule." *D. Br.* at 5. However, section 1415(i) of IDEA provides: "A decision made in a hearing conducted pursuant to subsection (f) or (k)[2] shall be final" subject to the parties' appeal rights. The statutory scheme provides that any party "aggrieved by the findings and decision made under this subsection [§ 1415(i)] shall have the right to bring a civil action." Thus, the relevant statutory scheme requires that plaintiffs (1) identify a decision and (2) allege that the decision aggrieved them.

In this case, plaintiffs undeniably meet these requirements. On Tuesday, April 13, 2010, the Hearing Officer denied Parents' motion to dismiss, notwithstanding the fact that there was no regulatory support for continued jurisdiction. She ruled: "The party requesting the hearings is the party with the right to withdraw the request. As the District

---

[2] Subsection (f), 20 U.S.C. § 1415(f), governs the hearing at issue here. Subsection (k) applies to interim placements in alternative settings in discipline cases.

6

followed statutory regs and filed in response to parents' request for an IEE, the District must have its hearing unless the parent withdraws the request for the IEE with prejudice. If there is a likelihood that the IEE issue will be raised again the District has the option of opposing the motion." *Compl.*, Ex. 4 (ECF No. 1-4) at p.2. The specific and detailed procedures enumerated in IDEA state that ***any*** decision made in a special education hearing "shall be final" and subject to appeal. 20 U.S.C. § 1415(i)(1).

Plaintiffs are aggrieved by this decision because the Hearing Officer lacked jurisdiction to hear the case once Parents withdrew the requests for a District-funded IEE and therefore should have granted their motion to dismiss. The statute itself limits the jurisdiction of Hearing Officers to cases "(A) with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child; ***and*** (B) which sets forth an alleged violation" of IDEA. 20 U.S.C. § 1415(b)(6).

"[A]ny party aggrieved by the findings and decision made under [§ 1415] shall have the right to bring a civil action" in a court of competent jurisdiction. 20 U.S.C. § 1415(i)(2). The Hearing Officer's decision to exercise jurisdiction and condition dismissal of the District's request for due process upon the waiver of plaintiffs' right to seek reimbursement in the future aggrieved plaintiffs. Thus, they have identified an appealable order subject to review in district court.

### 2. Count II Pleads a Claim Under IDEA Not Subject to Exhaustion Requirements

Count II is a challenge to the District's policy and practice identified in its submissions in the underlying due process case. This count is not dependent on the adjudication of any particular student's claims, because it is a request for a declaratory judgment on a legal question.

DOE regulations related to independent evaluations could not be more explicit:

7

> If a parent requests an independent educational evaluation, the public agency may ask for the parent's reason why he or she objects to the public evaluation. However, the public agency **may not require** the parent to provide an explanation and may not unreasonably delay either providing the independent educational evaluation at public expense or filing a due process hearing to defend the public evaluation.

34 C.F.R. § 300.502(b)(4) (emphasis added).

The District's statement of its policy and practice with respect to IEEs is similarly clear: "To the extent the District **would ever** consider funding an IEE, we will demand the specific reasons as to why they are pursuing an IEE and what specifically is their objection to the re-evaluation." *Compl.*, Ex. 1 (ECF No. 1-1) at p.4 (emphasis added).

This stated policy directly violates the governing regulations. There is no need for exhaustion because this presents a purely legal question. *See Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994). Count II therefore states a claim for relief.

### 3. Count III States Claims for Relief under Section 504 the ADA and Section 1983

The District's motion to dismiss must fail because it fails to apply the relevant legal principles to the actual facts of the case. Parents do not contest the fact that the regulations authorized the District to file initially to seek a ruling that its evaluations were appropriate. *See* 34 C.F.R. § 300.502(b)(4). Instead, the Complaint alleges that once Parents had withdrawn the request for prospective funding, and had agreed to fund the evaluations initially, the District had no right to abuse the procedures to extort the waiver of Parents' right to seek reimbursement in the future.

#### i. Neither IDEA Nor Its Implementing Regulations Creates A Legal Right for a School District to Defend its Evaluation Report

The District's motion to dismiss Count III of the Complaint is premised on the assertion that the "District, having already prepared for hearing and expended financial

8

resources in preparation, was entitled to defend its ERs consistent with the procedural protections afforded the Parents and School Districts under federal law." *D. Br.* (ECF No. 3-1) at 9 (citing 34 C.F.R. § 300.502(b)(4)). However, the procedural safeguards for parents and students in IDEA create no such legal right. To the contrary, the regulations state that **if** a parent requests an IEE at public expense, **then** the District may file a due process complaint to defend its evaluation. 34 C.F.R. § 300.502(b)(2)(i) (emphasis added).

In fact, IDEA explicitly forecloses the District's argument. Hearing Officers have limited jurisdiction. IDEA limits the jurisdiction of Hearing Officers to complaints

> (A) with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child; ***and***
> (B) ***which sets forth an alleged violation*** that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for presenting such a complaint under this subchapter, in such time as the State law allows, except that the exceptions to the timeline described in subsection (f)(3)(D) shall apply to the timeline described in this subparagraph.

20 U.S.C. § 1415(b)(6) (emphasis added).

Indeed, the United States District Court for the Southern District of Texas recently recognized that a request for declaratory relief by a school district does not state a cognizable claim under Section 1415.

> ASID requests five declarations, none of which concern a violation of the IDEA. Specifically, the complaint requested a ruling that (1) CC had been tested in all areas of suspected disability, (2) CC was not denied a free appropriate public education, (3) the individualized educational program for the 2007-08 school year was reasonably calculated to provide educational benefit to CC, (4) CC's placement in the life skills program was appropriate and (5) the due process hearing was brought by CC for an improper purpose. The first four requests seek declarations of compliance with applicable provisions (in contrast to violations). With regard to the fifth request, to the extent that it alleges any malfeasance, the Court does not recognize any pertinent statute that these allegations might "violate." Accordingly, as AISD's complaint does not allege any pertinent "violations," the Court finds that the complaint does not fall under § 1415.

*Alief Indep. Sch. Dist. v. C.C.*, 2010 U.S. Dist. LEXIS 34202, at *15-*16 (S.D. Tex. Apr. 7, 2010). As the *AISD* court recognized, a request for a declaration that an evaluation is appropriate is not a cognizable complaint under Section 1415(b)(6). If such a request is not even cognizable under the statute, a school district certainly has no right or privilege to insist upon the adjudication of its request for declaratory relief after parents have withdrawn their request for prospective funding.[3]

      ii. **The Complaint Adequately Pleads Actions Amounting to Unlawful "Interference" in Violation of Section 504 and the ADA**

It is unlawful to "interfere with any individual in the exercise or enjoyment of" rights protected by the ADA or Section 504. 42 U.S.C. § 12203(b); 34 C.F.R. § 100.7. These anti-interference provisions are similar to those in the Family Medical Leave Act, the Fair Housing Act, and the National Labor Relations Act. *Brown v. City of Tucson*, 336 F.3d 1181, 1191 (9th Cir. 2003). "Mindful that similarities between statutory provisions are an indication that Congress intended the provisions to be interpreted the same way, *see* , this court can look to judicial interpretations of these similarly worded statutes to inform its opinion." *Brown*, 336 F.3d at 1191 (citing *Northcross v. Bd. of Educ. of Memphis City Schs.*, 412 U.S. 427, 428 (1973)).

There are distinct elements to interference and retaliation claims. Recently, interpreting the FMLA, the Third Circuit Court of Appeals explained that to succeed on an interference claim, "a plaintiff must demonstrate that he or she was entitled to and denied some benefit under" the statute. *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508 (3d Cir. 2009); *see also Hayduk v. City of Johnstown,* 16 Wage & Hour Cas. 2d (BNA) 631 (3d Cir. 2010) (unpublished opinion); *Macfarlan v. Ivy Hill SNF, LLC*, 2010 U.S. Dist. LEXIS 77611, at

---

[3] Undoubtedly, under the regulations, the District is entitled to a hearing on the appropriateness of its evaluations before being ordered to reimburse the IEEs. However, nothing in the regulations indicates that the District must be able to insist upon that hearing at the time it prefers. Rather, *Lauren W.* recognizes that parents, not school districts, should be in control of the timing.

\*6 (E.D. Pa. July 28, 2010) ("plaintiff seeking to recover under this 'interference' or 'entitlement' provision must demonstrate that he was entitled to benefits and that his employer denied him these benefits").

Significantly, a plaintiff asserting a claim that the defendant has

> interfere[d] with, restrain[ed], or den[ied] the exercise of or the attempt to exercise, any right provided under this subchapter only needs to show that he was entitled to benefits under the [statute] and that he was denied them. Under this theory, the [plaintiff] need not show that he was treated differently than others. Further, the defendant cannot justify its actions by establishing a legitimate business purpose for its decision. An interference action is not about discrimination; it is only about whether the [defendant] provided the [plaintiff] with the entitlements guaranteed by the [federal law].

*Callison v. City of Philadelphia*, 430 F.3d 117, 119-120 (3d Cir. 2005); *see also Erdman*, 582 F.3d at 509 ("firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee").

The Complaint in this case alleges that plaintiffs sought to reserve their right to seek reimbursement for the IEEs until a later date, after they had sought and received their own evaluations. *Lauren W.* specifically held that the IEE regulation would be pointless if parents were precluded from seeking their own evaluations in order to determine the appropriateness of the District's evaluation. 480 F.3d at 274-275. Parents, seeking to avoid incurring significant expense in proceeding to hearing once on the evaluation and once on the substantive issues, rationally determined that it would be more efficient for them to pursue all claims in one proceeding. *Compl.* ¶ 44(b).

For purposes of an interference claim, the District's purported "non-retaliatory strategic reasons" (*D. Br.* at 8) for its actions is irrelevant. When defending an interference claim, "the defendant cannot justify its actions by establishing a legitimate business purpose for its decision." *Callison*, 420 F. 3d at 120. The only relevant inquiry is (1) did the plaintiffs have an entitlement and (2) did the defendant deny plaintiffs the benefit to which they were

entitled.[4]

In this case, Students and Parents had an entitlement, under IDEA itself and under *Lauren W.*, to seek reimbursement for the IEEs rather than prospective funding. The District denied Students and their Parents the benefit created by IDEA. This states a claim for interference in violation of the ADA and Section 504.

> iii. **The Complaint Adequately Pleads Facts Sufficient to Allege a Plausible Claim that the District Unlawfully Coerced, Intimidated, Threatened and Retaliated Against Plaintiffs in Violation of Section 504, the ADA, and the First Amendment to the United States Constitution**

It is unlawful to "coerce, intimidate, [or] threaten . . . any individual . . . on account of his or her having exercised or enjoyed, or on account of his or her having exercised or enjoyed, or on account of his or her having encouraged any other individual in the exercise or enjoyment of, any right granted or protected" by the ADA or Section 504. 42 U.S.C. § 12203(b); 34 C.F.R. § 100.7. The First Amendment to the Constitution protects a citizen's right to petition for redress without adverse action. Plaintiffs predicate their Section 1983 claim on a violation of the First Amendment.

Plaintiffs must plead the same elements for their statutory and constitutional claims of retaliation: "(1) that they engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W.*

Plaintiffs allege that they requested prospective funding for IEEs for E.T. and A.T., which is protected activity. (The District does not dispute this.) Plaintiffs also allege that when it became apparent that there would be another hearing on the substantive issues,

---

[4] As discussed, *supra*, the District had neither a statutory nor a regulatory right to a declaratory judgment that its evaluation was appropriate in the absence of a request for prospective funding of the evaluation. Nonetheless, even if that right did exist, it provides no defense to an interference claim.

12

they withdrew the request for prospective funding. *Lauren W.* establishes that the right to seek reimbursement after Parents have already received the private evaluations is also protected.

The District's response would deter a person of ordinary firmness from seeking prospective funding of an IEE. The District responded by telling Parents that it would not withdraw its complaint for due process and would force them into a duplicative and expensive hearing rather than allow Parents to decide later whether or not they would seek reimbursement.

Finally, the causation is obvious. The District committed these acts specifically because the District wanted to coerce Parents into waiving their right to seek reimbursement in the future. The District's argument that it would not have been able to effectuate its plan without the erroneous legal ruling of the Hearing Officer ignores the fact that the ruling was a necessary, but not sufficient, cause of the harm. Her ruling was erroneous precisely because she gave the District the sole power over dismissal of the complaint for due process. The District's conduct – refusing to dismiss the claim even in the absence of a request for a District-funded IEE – caused the injury to plaintiffs.

### iv.   No Judicial Privilege Exists that Allows a Party to Abuse the Legal Process

In raising the alternative defense of "absolute judicial privilege," the District makes the extraordinary and unsustainable assertion that it may, with impunity, use the judicial process itself as a weapon of intimidation or retaliation. Judicial privilege does not extend to conduct, as opposed to statements. "While some communications may be privileged – allowing, for instance, immunity from defamation actions – conduct is clearly susceptible to being punishable as abuse." *General Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 312 (3d Cir. 2003). Thus, an allegation that an attorney acted in a way that abused judicial process does not implicate judicial privilege at all.

Both state and federal law are replete with examples that prove the rather unremarkable point that no such absolute privilege exists. Pennsylvania law recognizes causes of actions such as abuse of process, wrongful use of civil proceedings and malicious prosecution, all of which – by definition – are predicated on acts committed during the course of judicial proceedings. *See, e.g.,* 42 Pa.C.S.A. § 8351 (Wrongful Use of Civil Proceedings). Federal law also supplies analogies that counsel against recognition of an absolute privilege when a plaintiff alleges abuse of the judicial process itself. *See* Fed. R. Civ. P. 11; *c.f., California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972) (carving out an exception to the *Noerr-Pennington* doctrine of immunity from liability for antitrust violations when the acts that are alleged to restrain trade occur in the context of petitioning the government); *Wrench Transp. Sys. v. Bradley*, 212 Fed. Appx. 92, 98-99 (3d Cir. 2006) (unpublished) (prosecutor's use of seized property to coerce testimony not absolutely privileged).

Finally, the anti-retaliation and anti-interference provisions of the ADA and Rehabilitation Act make no reference to and are fundamentally inconsistent with the sort of "absolute judicial privilege" Defendants assert. Federal law specifically prohibits interference and retaliation because an individual has "made a complaint, testified, assisted, or participated in any manner in an investigation, **proceeding or hearing**." 34 C.F.R. § 100.7(e). The District's interpretation of "judicial immunity" would allow defendants to coerce, intimidate, threaten, and otherwise harass individuals who participate in proceedings or hearings. This would eviscerate the protections against interference and retaliation contemplated by federal law. "Where judicial process is being perverted, immunity would impede, not further, the interests protected by the judicial privilege." *General Refractories*, 337 F.3d at 312.

    **C. This Court Should Deny the District's Motion for a More Specific Pleading**

In Section F of the argument, the District argues that plaintiffs must file a more specific pleading. *D. Br.* at 13. However, the District did not file a motion to strike (the proper vehicle for excising redundant or impertinent material) or a motion for a more definite statement, but instead a 12(b)(6) motion.

Even if the District had filed the appropriate motion, it would have to be denied. "Motions to strike are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties. *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002) (citing *Harleysville Mut. Ins. Co. v. GE Reinsurance Corp.*, 2002 U.S. Dist. LEXIS 8064, at *16 (E.D. Pa. May 6, 2002)).

Finally, the District makes the non-sensical assertion that the Complaint runs afoul of the Rules of Civil Procedure because it is an "effort to get their arguments to the ear of the Court before Defendant can even be heard." *D. Br.* at 13. A Complaint is *supposed to* provide enough notice to the defendant and the court of the claims being asserted. Defendant's argument on this point is therefore meritless.

**<u>CONCLUSION</u>**

Based upon the foregoing, plaintiffs respectfully submit that this Court must deny the District's Motion to Dismiss.

Respectfully submitted,

REISMAN CAROLLA GRAN LLP

**Dated: September 27, 2010**

*/s/ Catherine Merino Reisman*
Judith A. Gran
I.D. No. 40134
Catherine Merino Reisman
I.D. No. 57473
19 Chestnut Street
Haddonfield NJ  08033-1810
t 856.354.0071
f 856.873.5640
jgran@reismancarolla.com
creisman@reismancarolla.com

**Attorneys for E.T., A.T., R.Y. & D.T.**

FRANKEL & KERSHENBAUM, LLC

*/s/ Joshua M. Kershenbaum*
Joshua M. Kershenbaum
I.D. No. 203270
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA  19428
t 610.260.6054
f 610.645.0888
josh@davefrankel.com

**Attorneys for E.T., A.T., R.Y. & D.T.**